IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                     Case No. 1:04-cr-01558 KWR

FELICIA J. SMALLBEAR,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Defendant's *pro se* Motion for Compassionate Release **(Doc. 82)**. Defendant seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). She alleges the COVID-19 pandemic and her underlying conditions are extraordinary and compelling reasons to reduce her sentence and release her now. Having carefully reviewed the record and applicable law, the Court will deny the Motion.

## BACKGROUND

Defendant pled guilty to second degree murder and was sentenced to twenty-five (25) years' imprisonment. In the instant offense, Defendant was caring for her boyfriend's seventeen-month-old child, A.H, and killed him. The child died from blunt force trauma to the back of his head.

Defendant was arrested on June 2, 2004 and has been in custody since then. She is approximately forty years old and according to the BOP has an approximate release date of January 28, 2026. *See* https://www.bop.gov/inmateloc/

The Court notes that 25 years was on the low end of the range stipulated to by the parties pursuant to a Rule 11(c)(1)(C) plea agreement. As explained in the Pre-Sentence Report (PSR),

Defendant was charged with First Degree murder and faced a guideline imprisonment range of life.

In this motion, Defendant seeks compassionate release because of the danger posed by the COVID-19 pandemic at FCI Phoenix, and her underlying conditions, obesity and asthma, which place her at a greater risk of complications from a COVID-19 infection.

Defendant's motion to appoint counsel (**Doc. 83**) was denied (**Doc. 84**) and the Court directed the United States to respond to the motion for compassionate release. The Government responded, and Defendant filed a reply. Therefore, the Court considers this motion fully briefed and ready for decision.

## DISCUSSION

Generally, "a federal court may not modify a term of imprisonment once imposed." *United States v. Wilson*, 493 F. App'x 919, 921 (10th Cir. 2012) (citing *Dillon v. United States*, 130 S. Ct. 2683, 2687 (2010)). However, Congress has provided a limited exception to this rule and allowed for certain "compassionate release" sentence modifications under § 3582(c)(1)(A).

The Court may reduce a sentence under this provision if Defendant administratively exhausts her request and three other requirements are met: (1) the court finds that extraordinary and compelling reasons warrant such a reduction; (2) the court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the court considers the factors set forth in § 3553(a), to the extent that they are applicable. *United States v. McGee*, __ F.3d __, 2021 WL 1168980, at *5 (10th Cir. 2021) (published).

"[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others. But when

a district court grants a motion for compassionate release, it must of course address all three steps." *Id.* at *6.

Here, the Government admits that Defendant has exhausted her administrative remedies. However, the Government argues that the motion should be denied because Defendant (1) poses a danger to the community pursuant to USSG 1B1.13(2), and (2) the applicable § 3553(a) factors weigh against reducing her sentence.

The Court declines to reduce Defendant's sentence for two alternate reasons: (1) there are no extraordinary and compelling reasons for a sentencing reduction in this case, and (2) the applicable § 3553(a) factors weigh against reducing his sentence.

I.  **Defendant has not shown that extraordinary and compelling reasons warrant a sentencing reduction.**

Initially, the motion should be denied because Defendant has not shown extraordinary and compelling reasons warranting a sentencing reduction here.

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for a sentence reduction, including … a list of specific examples." 28 U.S.C. § 994(t).  *See also United States v. Saldana,* 2020 WL 1486892, at *2 (10th Cir.) (looking to Sentencing Commission factors to define extraordinary and compelling reasons for release).   However, because the Sentencing Commission has been unable to comply with Congress' directive, the Court is currently not bound by the Sentencing Commission in determining what constitutes an extraordinary and compelling reason for sentence reduction. *United States v. McGee*, ___F.3d ___, 2021 WL 1168980, at *12 (10th Cir. 2021) (published). Therefore, the Court has discretion to consider whether the circumstances in this case are an

extraordinary and compelling reason for a sentence reduction. *Id.* at *6-8. Similarly, the Court is also not constrained by policy statements set forth by the Sentencing Commission because the Sentencing Commission has not yet updated its policy statements. *Id.* at *10-12.

Many courts have found "extraordinary and compelling reasons" for release based on underlying health conditions and COVID-19. *See United States v. McCarthy*, 2020 WL 1698732, at *5 (D. Conn.) (collecting cases involving asthma, diabetes, and compromised immune systems); *United States v. Jenkins*, 2020 WL 2466911, at *6 (D. Colo.) (releasing inmate based on age and stroke risk); *United States v. Lopez*, 2020 WL 2489746, at *3 (D.N.M.) (analyzing release based on age, blood pressure, and diabetes). However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Nwankwo,* 2020 WL 2490044, at *1 (S.D.N.Y.) (collecting cases for the proposition "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional [risk] factors"). The Court will not find "extraordinary and compelling circumstances" based on generalized COVID-19 fears and speculation. *United States v. Heywood*, No. CR 17-2240 JAP, 2020 WL 4904050, at *2 (D.N.M. Aug. 19, 2020). In other words, the Court looks to the specific circumstances faced by each defendant in determining whether the risk posed by COVID-19 is so extraordinary and compelling as to warrant a sentencing reduction.

Here, the Court concludes that Defendant has not demonstrated that the risk posed to her by COVID-19 at FCI Phoenix is so extraordinary and compelling as to warrant a sentencing reduction. Defendant is forty years old. She asserts she has two underlying conditions (obesity and asthma) that increase her risk of complications if she contracts COVID-19.

The Government's response describes in detail the precautions taken by FCI Phoenix to protect inmates from COVID-19.  In contrast, Defendant's motion does not describe the danger posed to her by COVID-19 at FCI Phoenix or the deficiencies in FCI Phoenix's response to the pandemic.

As of April 7, 2021, there are currently zero confirmed active cases among inmates, while eleven staff members are infected. https://www.bop.gov/coronavirus/index.jsp (last accessed April 7, 2021).   Defendant indicated in her reply that she was currently being quarantined.  The Government represents that Defendant has been tested multiple times without testing positive. **Doc. 86 at 11.**  In other words, the procedures at FCI Phoenix are currently reducing the risk posted by COVID-19 in a group setting.

Moreover, the BOP is in the process of vaccinating inmates.  The BOP describes its procedure as follows:

> BOP is committed to making the vaccine available to all staff and inmates who wish to receive it as quickly as possible. When an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff - who come and go between the facility and the community - present a higher potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community. Remaining doses at each location are then provided to inmates based on priority of need in accordance with CDC guidelines.

https://www.bop.gov/coronavirus/index.jsp (last accessed April 7, 2021). As of April 7, 2021, 130 staff and 196 inmates at FCI Phoenix have been fully vaccinated with the Pfizer vaccine.   There are currently approximately 1,000 in mates in FCI Phoenix.  In total, the BOP has distributed 122,935 does and administered 111,887 doses as of April 7, 2021.  The BOP represents that it distributes the vaccine to staff and then inmates in accordance with CDC priorities.  Defendant is in a priority group based on her underlying conditions.

Assuming she has not already received the vaccine, the Court would not find that the risk posed to her by COVID-19 at FCI Phoenix is an extraordinary and compelling reason to reduce her sentence. Moreover, if Defendant has already received the vaccine, the Court finds that any risk posed to her by COVID-19 would not be so extraordinary and compelling as to warrant a reduced sentence.

**II.     Sentencing factors under § 3553(a) do not favor release.**

Alternatively, even if Defendant showed extraordinary and compelling reasons for a sentencing reduction, the applicable § 3553(a) factors do not favor release. § 3582(c)(1)(A) (the court "may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent they are applicable…"); *see, e.g., United States v. Carter*, 2020 WL 3051357, at *3 (S.D.N.Y.) (Section 3553(a) factors did not justify early release despite extraordinary and compelling reasons); *Easter v. United States*, 2020 WL 3315993, at *4 (E.D. Va.) (same); *United States v. Sears*, 2020 WL 3250717, at *2 (D.D.C.) (denying motion based on Section 3553(a) factors, despite petitioner's diabetes and hypertension).

In 2006 Defendant was sentenced to twenty-five (25) years' imprisonment, the low end of the range stipulated to by the parties in their Fed. R. Crim. P. 11(c)(1)(C) plea agreement. Her release date appears to be in January 2026. She requests her sentence be reduced to time served and that she be released. After considering and balancing all applicable § 3553(a)(1)-(7) factors and the record, the Court concludes that a sentencing reduction is not warranted.

Defendant was convicted of second-degree murder in this case. § 3553(a)(1). According to the facts set forth in the PSR, Defendant was caring for her boyfriend's seventeen-month-old son, A.H. She became angry at A.H. when he walked outside where she was standing on the

porch.  She picked him by the neck and shook him.  She squeezed him around the neck and took him inside.  **PSR ¶ 18**.  After giving him a bottle of water, he threw the bottle.  She grabbed him and again held him by the neck, and shook him.  **PSR ¶ 19**.  She stated that he began to cry again because he wanted milk, so she pushed him to the floor. She then picked him up, told him to stop crying, and threw him on the floor.  **PSR ¶ 20**.  A.H. hit his head on the floor, or potentially on a concrete fireplace.  Defendant stated that A.H. did not open his eyes.  A.H. died, and the medical investigator ruled his death a homicide as a result of blunt force head trauma.  A.H. suffered a contusion of the back of the head, subscapular hemorrhage, and multiple cranial skull fractures. **PSR ¶ 22**.  The facts in the PSR show that the head trauma was severe.  "The surgeon working on A.H. reported to BIA investigating agents that when he opened the dura, a stream of blood came out of Angel's head, almost hitting the ceiling.  This was due to A.H.'s brain being under so much pressure from swelling caused by this injury.  The child's brain was described as herniating, which means it was swelling so badly it did not have anywhere else to go but down towards the neck."  **PSR. ¶ 11**.  The trauma suffered by A.H. was severe, and A.H., a seventeen-month-old, was a vulnerable victim.  Defendant stated that she was angry at her boyfriend because he abused her, and she took her anger out on A.H. **PSR ¶ 20**.  The nature and circumstances of the offense, as well as the need to reflect the seriousness of the offense, strongly weigh against release.  § 3553(a)(1), (2)(A).

      The Court must also consider her history and characteristics.  The Court acknowledges that this is the only violent offense reflected in her PSR.  She asserts that she was abused as a child by her mother's boyfriend.  She was removed from her mother's home and placed in several foster homes. She also had substance abuse issues.

The Court concludes that reducing her sentence would not further "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). It would also not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense. Reducing his sentence would not further the need for deterrence. § 3553(a)(2)(A)-(D). Moreover, the Court finds that Defendant should serve the remainder of her sentence to protect the public from further crimes of the defendant. *Id.*

Defendant appears to argue that her current history and characteristics weigh toward a sentencing reduction. §3553(a)(1). In her motion, Defendant largely pointed to (1) her medical conditions, (2) the classes she has taken, and (3) that she has learned new ways of coping with her anger. She requests the opportunity to prove that she has changed. Although the Court considers her accomplishments while incarcerated, the Court must also consider her past conduct described above, which includes a violent act against a child.

Moreover, "the need for the sentence imposed…. To provide the defendant with…medical care… in the most effective manner" does not weigh in favor of release. § 3553(a)(2)(D). The record does not reflect that FCI Phoenix is not caring for her underlying conditions, or that she needs to be released to care for her medical conditions. Moreover, as explained above, FCI Phoenix is addressing the COVID-19 pandemic and vaccinating inmates. The procedures show that, as of April 7, 2021, there were zero confirmed active cases among inmates.

Therefore, considering the record and weighing the applicable § 3553(a)(1)-(7) factors, the Court declines to release Defendant or reduce her sentence.

Accordingly, the Court will the deny the Motion.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Compassionate Release **(Doc. 82)** is **DENIED**.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE